# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| LANDON ROGERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| EQUIFAX INFORMATION SERVICES, LLC, | )     JURY TRIAL DEMANDED |
| EXPERIAN INFORMATION SOLUTIONS, INC., | ) |
| TRANS UNION, LLC, and | ) |
| CREDIT CONTROL SERVICES, INC., | ) |
| | ) |
| Defendants | ) |

## COMPLAINT

COMES NOW Plaintiff, Landon Rogers, by and through undersigned counsel, and for his Complaint against the Defendants, Equifax Information Services, LLC, Experian Information Solutions, Inc., Trans Union, LLC, and Credit Control Services, Inc., he states and avers as follows:

## INTRODUCTION

1. This is an action for actual, statutory and punitive damages brought by Plaintiff against Defendants for the willful, knowing, and/or negligent violation of, *inter alia*, Chapter 41, the Consumer Credit Protection Credit Act, of Title 15 (Commerce and Trade) of the United States Code, specifically, 15 U.S.C. § 1681 *et seq.*, known as the *Fair Credit Reporting Act* ("FCRA") which relates to the proper dissemination and use of consumer credit and other financial information.

## PARTIES

2. Landon Rogers ("Plaintiff") is a natural person that resides in Republic, Missouri.

3. Plaintiff is a "consumer" as that term is defined by the FCRA, 15 U.S.C. § 1681a(c).

4. Equifax Information Services, LLC ("Equifax") is foreign limited liability company that regularly transacts business in Missouri through its registered agent, CSC- Lawyers Incorporating Service Company, 221 Bolivar St, Jefferson City, Missouri 65101.

5. Equifax is a national consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f).

6. Experian Information Services, Inc. ("Experian") is a foreign corporation that regularly transacts business in Missouri through its registered agent, The Corporation Company, 120 South Central Ave, Suite 400, Saint Louis, Missouri 63105.

7. Experian is a national consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f).

8. Trans Union, LLC ("Trans Union") is foreign limited liability company that regularly transacts business in Missouri through its registered agent, The Prentice-Hall Corporation, 221 Bolivar Street, Jefferson City, Missouri 65101.

9. Trans Union is a national consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f).

10. Credit Control Services, Inc. ("CCS") is a foreign corporation that regularly transacts business in Missouri.

11. CCS is a debt collection agency doing business as Credit Collection Services.

12. CCS is a furnisher of information as contemplated by the FCRA, 15 U.S.C. § 1681s-2(a) & (b), that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. §

2

1681*p*.

14.     Venue in this District is proper because Plaintiff resides in this District, Defendants transact business in this District, and the conduct complained of occurred in this District.

### **BACKGROUND AND FACTUAL ALLEGATIONS**

15.     In January 2022, Plaintiff decided he was ready to purchase a new home.  He consulted with a mortgage lender and obtained a copy of his credit report.

16.     Unfortunately, he was unable to qualify for mortgage financing because his credit score was too low.

17.     Upon reviewing his credit report, he noticed a collection account he did not recognize listed by CCS.

18.     On or about February 16, 2022, Plaintiff sent correspondence to the three major consumer reporting agencies, Equifax, Experian, and Trans Union ("the CRAs"), requesting the account be investigated for accuracy.

19.     Upon information and belief, and pursuant to 15 U.S.C. § 1681i(a)(2) of the FCRA, each consumer reporting agency forwarded a copy of Plaintiff's dispute letter to CCS.

20.     Pursuant to 15 U.S.C. § 1681s-2(b) of the FCRA, CCS was then obligated to investigate the disputed information for accuracy and modify or delete the information if the disputed information was determined to be incomplete or inaccurate.

21.     However, the CRAs failed to respond to Plaintiff's letter and allowed the CCS collection account to remain on Plaintiff's credit reports.

22.     This left Plaintiff confused.  Was the debt valid? Did the CRAs properly process his request?

23.     Eventually, Plaintiff retained counsel to inquire into the legitimacy of the CCS collection account.

3

24. On or about March 30, 2022, Plaintiff's counsel sent correspondence to CCS requesting it provide supporting documentation validating the debt at issue.

25. On or about April 9, 2022, in response to counsel's request, CCS sent correspondence that Plaintiff's collection account was closed, that CCS would not be pursuing any further collection activity, and that CCS would request deletion of the collection account from Plaintiff's credit reports.

26. CCS did not include any documentation supporting the alleged debt's validity in its correspondence to Plaintiff's counsel.

27. Believing the matter was behind him, on or about July 28, 2022, Plaintiff obtained a copy of his credit report to confirm that he was now ready to move forward with his home loan.

28. However, Plaintiff was shocked to discover the CCS collection account was still listed on all three of his credit reports with the CRAs.

29. In an effort to minimize any further delay, Plaintiff sent a letter on July 29, 2022, with a copy of CCS' letter, to the CRAs disputing the accuracy of the CCS collection account.

30. Surprisingly, again, all of the CRAs failed to respond to Plaintiff's disputes and the CCS account continued to appear on his credit reports.

31. This response left Plaintiff angry. Did CCS ever request removal of the collection account as it stated it would? Did the CRAs forward his dispute letter and the supporting letter from CCS as required? Why was this collection account still on his report?

32. Upon information and belief, CCS received notice of the disputes from the CRAs and incorrectly sent notice to the CRAs stating it had verified the accuracy of the disputed information.

33. Plaintiff sent additional dispute letters to the CRAs regarding the inaccurate CCS account on September 13, 2022, and October 31, 2022.

34. Again, Plaintiff's efforts were unsuccessful, and the CCS collection account remained listed

on Plaintiff's credit file.

35. Upon information and belief, CCS continues to improperly "verify" to the CRAs that the account is accurate.

36. Upon information and belief, CCS intentionally, knowingly and recklessly "verifies" disputed debts as still owing as a tool to pressure consumers, like Plaintiff, into voluntarily paying debts that are not legally owed, and the CRAs refuse to prevent CCS from doing it.

37. Plaintiff fears, justifiably, that the CRAs and CCS will continue to report the inaccurate collection account on his credit report, harming his credit scores, absent litigation.

## FIRST CLAIM FOR RELIEF

### (Negligent and Willful Violations of 15 US.C. § 1681*i* by Equifax)

38. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

39. By letters July 29, 2022, September 13, 2022, and finally October 31, 2022, Plaintiff disputed the inaccurate CCS collection account appearing on his credit report.

40. Despite Plaintiff's disputes, and supporting documentation, Equifax allowed the inaccurate CCS collection account to remain on Plaintiff's credit report.

41. Equifax's failure to remove the inaccurate CCS collection account despite numerous opportunities to act demonstrates that no reasonable investigation occurred.

42. By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Equifax willfully and/or negligently violated 15 U.S.C. § 1681*i*(a)(1).

43. As a direct and proximate result of Equifax's willful and/or negligent refusal to conduct reasonable investigations as mandated by the FCRA as outlined above, Plaintiff has suffered loss and

5

damage including, but not limited to: financial loss, loss of credit opportunity, a justifiable fear to request credit, expenditure of time and resources, mental anguish, humiliation and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681*o*.

44.     Equifax's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff.  The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, retaliation, and willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages, plus attorneys' fees and costs pursuant 15 U.S.C. § 1681*n*.

**WHEREFORE** Plaintiff prays for judgment on this ***First Claim for Relief*** in his favor and against Equifax, and for the following relief:

(a)     Actual damages sustained;

(b)     Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(c)     Punitive damages in an amount to be determined by the jury;

(d)     Reasonable attorneys' fees and costs; and

(e)     Any other and/or further relief as deemed appropriate and just by this Honorable Court.

## SECOND CLAIM FOR RELIEF

### (Negligent and Willful Violations of 15 US.C. § 1681*i* by Experian)

45.     Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

46.     By letters July 29, 2022, September 13, 2022, and finally October 31, 2022, Plaintiff

6

disputed the inaccurate CCS collection account appearing on his Experian credit report.

47. Despite Plaintiff's disputes, and supporting documentation, Experian allowed the inaccurate CCS collection account to remain on Plaintiff's credit report.

48. Experian's failure to remove the inaccurate CCS collection account despite numerous opportunities to act demonstrates that no reasonable investigation occurred.

49. By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Experian willfully and/or negligently violated 15 U.S.C. § 1681$i$(a)(1).

50. As a direct and proximate result of Experian's willful and/or negligent refusal to conduct reasonable investigations as mandated by the FCRA as outlined above, Plaintiff has suffered loss and damage including, but not limited to: financial loss, loss of credit opportunity, a justifiable fear to request credit, expenditure of time and resources, mental anguish, humiliation and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681$o$.

51. Experian's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, retaliation, and willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages, plus attorneys' fees and costs pursuant 15 U.S.C. § 1681$n$.

**WHEREFORE** Plaintiff prays for judgment on this ***Second Claim for Relief*** in his favor and against Experian, and for the following relief:

(f) Actual damages sustained;

(g) Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

7

(h)     Punitive damages in an amount to be determined by the jury;

(i)     Reasonable attorneys' fees and costs; and

(j)     Any other and/or further relief as deemed appropriate and just by this Honorable Court.

## THIRD CLAIM FOR RELIEF

### (Negligent and Willful Violations of 15 US.C. § 1681*i* by Trans Union)

52.     Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

53.     By letters July 29, 2022, September 13, 2022, and finally October 31, 2022, Plaintiff disputed the inaccurate CCS collection account appearing on his Trans Union credit report.

54.     Despite Plaintiff's disputes, and supporting documentation, Trans Union allowed the inaccurate CCS collection account to remain on Plaintiff's credit report.

55.     Trans Union's failure to remove the inaccurate CCS collection account despite numerous opportunities to act demonstrates that no reasonable investigation occurred.

56.     By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Trans Union willfully and/or negligently violated 15 U.S.C. § 1681*i*(a)(1).

57.     As a direct and proximate result of Trans Union's willful and/or negligent refusal to conduct reasonable investigations as mandated by the FCRA as outlined above, Plaintiff has suffered loss and damage including, but not limited to: financial loss, loss of credit opportunity, a justifiable fear to request credit, expenditure of time and resources, mental anguish, humiliation and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681*o*.

58.     Trans Union's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff.  The injuries suffered by Plaintiff are

attended by circumstances of fraud, malice, retaliation, and willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages, plus attorneys' fees and costs pursuant 15 U.S.C. § 1681*n*.

**WHEREFORE** Plaintiff prays for judgment on this ***Third Claim for Relief*** in his favor and against Trans Union, and for the following relief:

(k)     Actual damages sustained;

(l)     Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(m)    Punitive damages in an amount to be determined by the jury;

(n)     Reasonable attorneys' fees and costs; and

(o)     Any other and/or further relief as deemed appropriate and just by this Honorable Court.

<u>**FOURTH CLAIM FOR RELIEF**</u>

**(Negligent and Willful Violations of 15 U.S.C. § 1681*s-2* by CCS)**

59.     Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

60.     CCS is a "furnisher" as that term is used in 15 U.S.C. § 1681*s-2*.

61.     Furnishers of credit information have duties under the FCRA, specifically 15 U.S.C. § 1681*s-2*(b)(1), to investigate disputes initiated from consumers to CRAs as to the accuracy of information reported about them by the furnisher.

62.     On at least three occasions, Plaintiff contacted the CRAs specifically to dispute the accuracy of the derogatory CCS account being reported on his credit report.

63. Plaintiff specifically advised the CRAs that a mistake had been made, provided all necessary information to support his dispute, and requested the false information be corrected accordingly.

64. Upon information and belief, and pursuant to 15 U.S.C. § 1681*i*(a)(2), CCS received notification of these disputes from the CRAs.

65. Nevertheless, the CCS account was allowed to remain on Plaintiff's credit report under the guise that CCS had "verified" the information as true.

66. Either CCS conducted no real investigation of Plaintiff's disputes, or such investigations were so lacking as to allow confirmed information known to be false to remain on Plaintiff's credit file.

67. CCS' failures in this regard are exacerbated by the sheer number of times CCS was contacted about this account.

68. By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, CCS negligently and/or willfully violated § 1681*s-2*(b)(1) with respect to the disputes lodged by Plaintiff.

69. As a direct and proximate result of CCS's willful and/or negligent refusal to comply with the FCRA as described herein, Plaintiff has suffered loss and damage including, but not limited to: financial loss, loss of creditworthiness, loss of credit opportunity, damage to reputation, expenditure of significant time, energy and out-of-pocket costs, considerable distress, mental anguish, worry, frustration, fear and embarrassment, entitling Plaintiff to an award of actual damages as determined by the jury, plus attorneys' fees and the costs of this action, pursuant to 15 U.S.C. § 1681*o*.

70. CCS's complete and utter indifference as to its obligations under the FCRA reveals a conscious disregard of the rights of Plaintiff, and the injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, calling for an assessment of punitive damages against CCS, pursuant to 15 U.S.C. § 1681*n*(a)(2).

**WHEREFORE** Plaintiff prays for judgment on this *Fourth Claim for Relief* in his favor and against CCS, and for the following relief:

(a)    Actual damages sustained;

(b)    Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(c)    Punitive damages in an amount to be determined by the jury;

(d)    Reasonable attorneys' fees and costs; and

(e)    Any other and/or further relief as deemed appropriate and just by this Honorable Court.

<u>**JURY DEMAND**</u>

Plaintiff respectfully demands a jury trial on all issues so triable.

Respectfully submitted,

<u>**By: /s/Andrew M. Esselman**</u>
Andrew M. Esselman #64837
Credit Law Center, LLC
4041 NE Lakewood Way, Suite 140
Lee's Summit, MO 64064
T: (816) 246-7800
F: (855) 523-6884
andrewe@creditlawcenter.com
**Attorney for Plaintiff**